[Cite as *State v. Diol*, 2021-Ohio-3120.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200285 |
|  |  | TRIAL NO. B-1700978 |
| Plaintiff-Appellee, |  |  |
|  | : | *O P I N I O N.* |
| vs. |  |  |
| MOHAMED DIOL, | : |  |
|  | : |  |
| Defendant-Appellant. |  |  |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  September 10, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Melynda J. Machol*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*McKinney & Namei Co., LPA, Sarah C. Larcade* and *Firooz T. Namei*, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1}  Defendant-appellant Mohamed Diol appeals the Hamilton County Common Pleas Court's judgment denying his "Emergency Motion to Vacate Guilty Plea under *Padilla v. Kentucky* and *Lee v. United States.*"  We reverse the court's judgment.

*Procedural Posture*

{¶2}  Diol was indicted in February 2017 for marijuana trafficking and possession and possessing criminal tools.  In June, pursuant to a plea agreement, he withdrew his motion to suppress, withdrew his not-guilty pleas, and entered guilty pleas to marijuana trafficking and possession, in exchange for dismissal of the criminal-tools charge.  In July 2017, following a hearing, the trial court accepted the pleas, found Diol guilty, and imposed for each offense one day of confinement, three years of intensive-supervision community control, a six-months driver's-license suspension, and 100 hours of community service.  Diol did not appeal those convictions.

{¶3}  Six months later, Diol filed with the common pleas court his "Emergency Motion to Vacate Guilty Plea under *Padilla v. Kentucky* and *Lee v. United States.*"  In that motion, Diol sought relief from his convictions on the ground that his guilty pleas had been the involuntary, unknowing, and unintelligent product of his trial counsel's ineffectiveness in failing to advise him that his convictions upon his guilty pleas to those drug offenses subjected him to mandatory deportation and exclusion from the United States.  Diol supported the motion with his own affidavit. He averred that he was a citizen of Mauritania, that trial counsel had advised him that his convictions "would not result in automatic deportation [but] that at most it possibly could make it discretionary," and that if he had known that his pleas would "lead to automatic deportation," he would not have pled guilty.

{¶4}    The common pleas court denied the motion.  This court reversed that judgment and remanded for an evidentiary hearing on the motion.  *State v. Diol*, 1st Dist. Hamilton No. C-180249, 2019-Ohio-2197.

*The Hearing*

{¶5}    At the hearing on the motion, Diol and his trial counsel testified. Counsel stated that deportation had been discussed on a number of occasions during the plea process, including the completion of the plea form.  On that form, counsel had indicated that Diol was not a United States citizen by placing an X on the line provided.  When Diol then, with his initials, indicated on the form that he was a citizen, counsel scratched out the X.   Asked whether deportation was the determinative issue for Diol in deciding to plead guilty, counsel responded that he did not remember, but that Diol had insisted that he was a United States citizen and could not be deported.

{¶6}    Diol testified that he was a citizen of Mauritania, not the United States. He had come to the United States at the age of 16 to be with his father, who was a "political refugee," and his current status was "refugee asylum * * * indefinite."  He stated that because his father had been a citizen when Diol came to the United States, he had read the term "indefinite" to mean that his status would not expire. And when he traveled to and from the United States, he used a travel document issued by the immigration service that, to him, looked like a United States passport. Consequently, throughout the plea process, he believed, and represented to the court, that he was a United States citizen and thus could not be deported.  Diol further testified that he had shown his documentation to trial counsel, who neither disabused him of the notion that he was a United States citizen, nor discussed with him the immigration consequences of his guilty pleas if he was not.  And Diol stated that if he had understood that his convictions mandated his removal, he would not have pled guilty and would have insisted on a trial.

{¶7}   Following the hearing, the common pleas court again denied the motion.   In this appeal, Diol presents a single assignment of error, challenging the denial of the motion.   The challenge is well taken.

### *A Manifest Injustice*

{¶8}   Diol's "Emergency Motion to Vacate Guilty Plea under *Padilla v. Kentucky* and *Lee v. United States*" was reviewable by the common pleas court under the standards provided by Crim.R. 32.1.  *See Diol*, 1st Dist. Hamilton No. C-180249, 2019-Ohio-2197, at ¶ 17.   That rule confers upon a court the discretion to permit withdrawal of a guilty or no-contest plea after sentencing "to correct manifest injustice."  *See State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraphs one and two of the syllabus; *State v. Brown*, 1st Dist. Hamilton No. C-010755, 2002-Ohio-5813.

{¶9}   In *State v. Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, 129 N.E.3d 404, the Supreme Court of Ohio held that when a noncitizen criminal defendant alleges ineffective assistance of counsel arising from the plea process, the defendant must meet the two-prong test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and applied in the immigration context in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). *Romero* at ¶ 1, 3, and 14.   The defendant must show that counsel's performance was deficient, that is, that counsel did not accurately inform the defendant of the immigration consequences of his guilty plea.  *Id.* at ¶ 15; *Padilla* at 374.   And the defendant must demonstrate prejudice resulting from counsel's deficient performance, that is, that there is "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial."  *Romero* at ¶ 16, quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

4

{¶10} Thus, on his Crim.R. 32.1 motion, Diol bore the burden of demonstrating a prejudicial deficiency in his trial counsel's advice concerning the removal consequence of his guilty pleas. And the common pleas court's determination that Diol had failed to sustain that burden may be disturbed on appeal only if the court abused its discretion. *Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324, at paragraph two of the syllabus. The phrase "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary or unconscionable, or that the court's decision was the product of an unsound reasoning process. *See State v. Hill*, 12 Ohio St.2d 88, 232 N.E.2d 394 (1967), paragraph two of the syllabus; *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14.

{¶11} *Counsel's advice was deficient.* In our 2019 decision, we remanded for an evidentiary hearing to "clarify whether Diol is a United States citizen and whether but for his attorney's misadvice, he would have pleaded not guilty and insisted on going to trial." *Diol*, 1st Dist. Hamilton No. C-180249, 2019-Ohio-2197, at ¶ 41. We declared that counsel had had a duty to determine whether Diol was a United States citizen and, if he was not, to advise him of the immigration consequences of his guilty pleas. The law was clear that the consequence of Diol's drug convictions was his removal from the United States. And we found it "clear" from the record that counsel had given Diol "incorrect advice" during the plea hearing, when counsel stated, "I don't believe this would lead to automatic deportation. I believe at worst it possibly could make it discretionary." We also found that counsel's deficient performance was not "cured" by the statutory advisement provided by the trial court. Nor was that deficiency cured when, during the trial court's colloquy with Diol beyond that advisement, Diol responded affirmatively to the trial court's question whether he wanted to plead guilty "even if it means automatic removal from the United States and you're never able to return?"

5

We concluded that, in the absence of an unequivocal statement by the trial court that Diol would be deported, the trial court's admonition did not provide the degree of accuracy concerning immigration consequences that *Padilla* demands.

{¶12} In the wake of our 2019 decision, the determination whether Diol's trial counsel's advice concerning the immigration consequences of his guilty pleas had been constitutionally deficient turned solely upon the question whether Diol was a United States citizen. Because the evidence adduced at the hearing on remand showed conclusively that he was not, our 2019 decision compels the conclusions here that counsel's advisement was constitutionally deficient, and that that deficiency was not cured by the trial court's statutory advisement or its advisement beyond the statutory advisement during its colloquy with Diol.

{¶13} *Counsel's misadvice was prejudicial.* In assessing here the common pleas court's exercise of its discretion in denying Diol's motion, the determinative question is whether Diol, at the hearing on his motion, sustained his burden of demonstrating that there was a reasonable probability that, but for his trial counsel's misadvice concerning the removal consequence of his guilty pleas, he would not have pleaded guilty and would have insisted on going to trial. We conclude that he sustained that burden, and that the common pleas court's determination to the contrary constituted an abuse of discretion.

{¶14} Determining the prejudice prong of the analysis entails an examination of the totality of the circumstances and consideration of various factors. Those factors include the defendant's connections to the United States; the importance the defendant placed on avoiding deportation, as substantiated by contemporaneous evidence, if any; the court's advisement concerning immigration consequences; and the consequences of going to trial. *See State v. Bozso*, 162 Ohio St.3d 68, 2020-Ohio-3779, 164 N.E.3d 344, ¶ 19-36, citing *Lee v. United States*, \_\_\_\_

U.S. \_\_\_\_, 137 S.Ct. 1958, 1965-1969, 198 L.Ed.2d 476 (2017), and *Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, 129 N.E.3d 404, at ¶ 29-33.

{¶15} The evidence adduced at the hearing was uncontroverted. In 2004, at the age of 16, Diol came to the United States to live with his father. His father had come to the United States as a political refugee and was a United States citizen when Diol joined him here. Thus, Diol's connections to the United States were substantial.

{¶16} At the hearing on the motion, Diol testified that, throughout the plea process, he had believed that he was a United States citizen and thus not subject to removal. He offered a reasonable explanation for that belief. And there is nothing in the record to suggest that that belief was other than sincere.

{¶17} In remanding for a hearing on the motion, we concluded that trial counsel had misadvised Diol concerning the removal consequence of his guilty pleas, and that the trial court's statutory and extra-statutory advisements did not cure trial counsel's misadvice, because those advisements did not provide the degree of accuracy concerning immigration consequences that *Padilla* demands. At the hearing, Diol testified that because he believed that he was a United States citizen, and was thus not subject to removal, the discussions that occurred over the course of the plea process concerning the immigration consequences of his guilty pleas did not prompt him to contemporaneously express to his trial counsel or the trial court the importance he placed on avoiding removal.

{¶18} As for the consequences of going to trial, Diol was charged with fifth-degree-felony marijuana trafficking, fourth-degree-misdemeanor marijuana possession, and fifth-degree-felony possession of criminal tools. He pled to drug trafficking and drug possession, as charged, and his plea arrangement did not include an agreed sentence. If found guilty at a trial of those charges, he faced potential terms of confinement of less than a year on each offense, but incarceration was not mandated. The trial court called for and reviewed the report of a

presentence investigation and determined that the appropriate sentence was community control. Comparatively speaking, the mandatory consequence of Diol's guilty pleas—removal from the United States—was severe. Diol testified at the hearing that, if he had then understood that he was not a citizen and that the consequence of his guilty pleas was his removal, he would not have accepted the plea offer, but would have gone to trial. Under the circumstances, the common pleas court could not reasonably have discredited that testimony.

*Reversed and Remanded*

{¶19} The record shows that Diol, at the hearing on his Crim.R. 32.1 motion to withdraw his guilty pleas, sustained his burden of demonstrating a prejudicial deficiency in his trial counsel's advice concerning the removal consequence of his guilty pleas. Thus, withdrawal of his guilty pleas was necessary to correct a manifest injustice. We, therefore, hold that the common pleas court abused its discretion in denying the motion. Accordingly, we sustain the assignment of error, reverse the common pleas court's judgment denying the motion, and remand for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

**MYERS, P.J.,** and **BOCK, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.